UPTON (HOBART v.). See Cases Nos. 6,547 and 6,548.

---

## Case No. 16,802.
### UPTON v. JACKSON.
[1 Flip. 413; [1] 4 Ins. Law J. 189.]

Circuit Court, W. D. Michigan. Dec. 17, 1874.

CORPORATIONS—AUTHORITY OF DIRECTORS—TRANSFER OF CHARTER—INCREASE OF STOCK—ESTOPPEL—TRANSFER OF STOCK —FRAUD—ASSESSMENTS—ASSIGNEE IN BANKRUPTCY.

1. Assignee in bankruptcy, who is the plaintiff. sued defendant, who is a stockholder, to recover for unpaid stock. *Held*, that if the original charter was transferred by directors without authority of stockholders, the transfer would be invalid, and the transferee would take nothing. On the other hand. if as stockholders the shareholders subsequently participated in the company's business under a new management, or permitted the scheme to be carried out without objection. they were estopped from denying the validity of the transfer.

2. The charter originally limited the amount of the stock, but on certain conditions, prescribed by the legislature. authority was given to increase it. Parties, claiming the right to do so, complied with the required conditions and issued additional stock. Now as between the purchasers or holders and the corporation or its creditors—the former are estopped from denying the validity of their proceedings, or the validity of the stock so issued.

3. If, through fraud or misrepresentation, parties purchase such stock, they may repudiate their contract of purchase and be relieved of liability, provided they act promptly and are without laches. But when repeated assessments have been paid by them, or they have in person or by proxy taken part in the meetings of stockholders, continuing to hold such stock a year or more. and until the insolvency of the company, it will be too late to obtain relief upon allegations of fraud and misrepresentation.

4. As against creditors, stockholders or directors have no power to exempt themselves from liability. when only twenty per cent. of the stock has been paid in. by passing a resolution declaring that the remaining eighty per cent. is non-assessable and printing the words "non-assessable" across the stock certificate.

5. The interests of creditors and likewise of the bankrupt are represented by the assignee, and he can recover so far as the question touches upon the validity of the stock, as if solely acting in the interests of creditors.

[This was an action by Clark W. Upton. an assignee in bankruptcy, against Samuel D. Jackson, to recover an assessment of unpaid stock in a corporation. See Cases Nos. 16,798, 16,799, and 16,801.]

Hughes, O'Brien & Smiley, for plaintiff.

J. W. Champlin and L. D. Norris, for defendant.

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

WITHEY, District Judge (charging jury). * * * This suit is said to be a test case upon. the law and fact for a large number of cases. pending in this court, brought by the plaintiff as assignee in bankruptcy of the Great Western Insurance Company of Chicago, to recover from alleged stockholders the unpaid stock held by them in that now bankrupt corporation. The ability with which it has been tried by the learned counsel must satisfy all parties concerned that their rights and interests have been placed before the court and jury in the fullest measure. Evidence has been put in under objections to its admissibility, subject to such rulings as the court should deem necessary in its instructions to the jury, and I shall further on inform you upon what basis you are to place your finding.

The Great Western Insurance Company was chartered by the legislature of Illinois. in 1857; organized in 1859, with an authorized capital of $500,000, and a subscribed capital of $100,000. From its organization up to some time in 1860 the company transacted the business of fire insurance, having its office in Chicago. In 1860 its capital was impaired by losses and the company ceased to do business. In 1869 the legislature of Illinois passed a general insurance law, which, among other things, authorized existing insurance companies to increase their capital stock, by amendment of their charters and conforming to certain requirements. With a view to bring this company within the provisions of that law, certain parties sought to acquire control of its charter. To show what was done, the plaintiff has introduced evidence tending to prove that some of the holders of the original stock transferred their stock to two or three of their associates, and these, as directors of the company, made a transfer of the charter to new parties, and. thereupon stock in addition to the original $100,000 was issued under the charter which permitted $500,000 capital.

An attempt was then made under the law of 1869, by those exercising control, to effect an authorized increase of capital up to $5,000,000. To prove what was done in that behalf, documents properly authenticated under the great seal of the state of Illinois, have been put in evidence, being a consent by stockholders to such increase, a copy of the charter as amended, with a declaration of a desire to amend, a certificate of conformity by the attorney-general of the state, and one by the auditor of public accounts as to the condition of the capital, etc. There is evidence that the company, thus reorganized. opened an office in Chicago and transacted the business of fire insurance, issuing a large number of policies from July, 1870, up to the time of the great fire in Chicago, October 8 and 9, 1871; that stock was issued and sold up to about $1,000,000; that defendant, a resident of Grand Rapids, Michigan, purchased from an agent of the company, on the 25th day of November, 1870, $1,000 of the new

stock; that he paid twenty per cent. assessed thereon, and received a certificate for $1,000, across which was printed the word "non-assessable." After the time of the Chicago fire he paid ten per cent. additional on his stock, and before aware of the insolvent and bankrupt condition of the company.

There is also evidence that the company while so transacting business, caused circulars in pamphlet form to be printed and distributed, representing from time to time the authorized capital, the amount subscribed, the amount paid in, and the names of stockholders and officers. Its policies also contained statements of the actual capital and names of the officers. Defendant continued to hold his stock certificate from the time of its issue, in May, 1870, to the time of this trial, pending which he offered to surrender it. There is evidence of stockholders' and directors' meetings being held, and that owing to the Chicago fire, in 1871, the company became largely involved upon its policies. In January, 1872, a creditor commenced proceedings in bankruptcy, and in February the corporation was adjudicated bankrupt by the United States district court at Chicago. Plaintiff was appointed assignee, and received conveyance of the property and assets of the company. Such proceedings were thereafter had, that the bankrupt court made a call upon all stockholders for payment of their unpaid stock, of which due notice was given, and a personal demand was made upon defendant. He refused, and this suit is brought to enforce collection.

On the other hand, defendant has introduced evidence attacking the proceedings to reorganize the company in 1870, and to show want of authority to issue the stock sold to defendant. It is, that the holders of the original stock never parted with their stock, never by vote or otherwise authorized an increase of stock, and never authorized a transfer of the chartered rights of the company. There is also evidence tending to show that the required assent to an increase of stock was not signed by enough of the stockholders; that it was in part signed by persons owning no stock and by persons holding void stock, and that many of the names signed to the document consenting to an increase of stock, were forgeries.

I deem it unnecessary to make any further reference to the testimony; enough has been stated to indicate the material questions arising, and upon which instructions and rulings are required.

Substantially, the defense urge that the proceedings to reorganize the company and increase the stock, were without right or authority of law, and were fraudulent and void; that the directors could not transfer the charter and rights of stockholders without authority from the shareholders; and it is urged the latter never gave such authority. Again, that the stockholders never, by vote or otherwise, consented to an increase of stock; and

that the paper filed in the office of the auditor of public accounts was not signed by shareholders, but was false and forged as to many of the names appearing thereon; and, therefore, that the stock issued and sold to defendant was void.

Assuming that the transfer of the charter was made by directors without authority of stockholders, the rule would be against the validity of the transfer, and the transferees would take nothing thereby. But there is evidence tending to show that the shareholders acquiesced subsequently in the transfer by the directors by acting as stockholders in meetings held under the reorganization or new management, and that some of them held office, purchased of the increased stock, and participated in various ways in the business of the company. I instruct the jury that such participation would amount to acquiescence on the part of such stockholders, and be a ratification of the action of the directors, which would estop the shareholders from denying the validity of the transfer. Those stockholders, if any, who remained silent and allowed the proceedings to go forward, and the scheme to be foisted upon the public without objection, permitting the company to be held out as authorized to issue policies, increase its capital, and deal with the public, would be equally estopped.

The charter of this corporation, as originally granted, limited its capital stock to $500,000. The rule of law is, that in the absence of further legislative sanction, any stock issued in excess of the $500,000 would be unauthorized and void. But when the legislature, in 1869, granted authority to existing insurance companies to increase their stock upon taking certain proceedings, and persons acting under color of authority took proceedings and attempted compliance with the law, and in pursuance of those proceedings actually issued additional stock, claiming to have obtained the right so to do, obtained control of the corporation affairs, and launched its new scheme; then, as between the purchasers and holders of such new stock and the corporation or its creditors, the shareholders are estopped from denying the regularity of the proceedings to increase the stock, and from denying the validity of the stock so issued. If through misrepresentation and fraud any one is induced to subscribe for or purchase of such stock, he may repudiate the stock and be relieved of his relation of stockholder, provided he does so promptly and uses reasonable diligence in measures to that end. But it will be too late to set up the misrepresentation and fraud after he has paid repeated assessments, participated, in person or by proxy, in the meetings of stockholders, and continued to hold his stock for a year or more, and until the company has, by reason of losses, become insolvent, and creditors seek to have its assets applied to the payment of their claims.

For the purposes of this suit, prosecuted by the assignee in bankruptcy of the corporation against a holder of the increased stock, and therefore brought in behalf and for the interest of creditors as well as the bankrupt company, I hold that there was legislative authority to reorganize and increase the stock of the Great Western Insurance Company, and that the documentary evidence, put into the case by plaintiff, of authenticated copies of papers in the office of the auditor of public accounts of Illinois, are legally sufficient to establish the right and authority to issue the increased stock. The documentary evidence, taken in connection with proof of user under the charter as amended, such as the opening and keeping of an office, the actual issue and sale of stock to the amount of a million of dollars, more or less, and the transaction of business for about a year and a half, not only constitutes prima facie evidence of the existence of the corporation under the amended charter, with power to increase and dispose of the capital stock, but concludes all stockholders who, by continued silence or participation in its affairs as stockholders or officers, permitted the company to palm itself off on the public as a corporation entitled to the exercise of such powers and rights. The alleged false, irregular, and defective proceedings in launching the new enterprise could have been inquired into by the state; but such stockholders will not be allowed to question the proceedings as against the rights of creditors. The practical effect of the rulings I have given would be to exclude much of the defendant's evidence. These rulings have not been made so much for the purpose of instructing the jury as to decide the questions raised at the bar, and so ably argued.

Gentlemen of the jury, the instructions which form the basis of your verdict are brief, and I now invite your attention to them. If you find that defendant, on or about November 25, 1870, became the holder, by purchase or otherwise, of one thousand dollars of the stock of the Great Western Insurance Company, and continued to hold and own the same up to the time of the insolvency and bankruptcy of the company, in February, 1872, and during that time paid thirty per cent. assessed by the company, and acted in person or by proxy at a stockholders' meeting; and if you find the company, during all that time, or up to its actual insolvency, was doing business as an insurance company, issued stock and policies, and kept an office, and advertised itself by pamphlets and circulars, representing and holding itself out to the public as a corporation authorized to do a fire insurance business, with an authorized capital of $500,000, a subscribed capital of $1,000,000, or about that, the amount thereof paid in, and giving the names of stockholders and officers; then I instruct you defendant is estopped from denying the validity of the stock held by him, and is liable to plaintiff for the amount thereof unpaid, with interest at six per cent. from August 22, 1872.

There is printed across defendant's certificate of stock the words, "non-assessable." Twenty per cent. had been paid when it was issued; hence, the remaining eighty per cent. was represented as non-assessable. Evidence is in the case showing that the company passed a resolution declaring eighty per cent. of all the new or increased stock non-assessable.

I instruct you that the directors and stockholders had no power to exempt stockholders from liability, or to limit their liability within the full amount of the stock held as against creditors of the corporation. The capital stock was held out as, and did represent part of, the assets of the company, upon the faith of which the public did business with it. The stock issued represented capital. Whatever was not paid was subject to be called for, if necessary, to meet liabilities.

The plaintiff, as I have said, sues as well in the interest of creditors as of the bankrupt, and no defense can be set up against his right of recovery which could not be set up if the suit was solely in the interest of creditors, so far as touches the validity of the stock in question. Under these brief instructions, I submit the case to the jury.

See Chubb v. Upton, 95 U. S. 665; Pullman v. Upton, 96 U. S. 328; Upton v. Tribilcock, 91 U. S. 45; Webster v. Upton, Id. 65; Sanger v. Upton, Id. 56; and Hawley v. Upton, 102 U. S. 315,—affirming the principles here laid down.